The next and last case on our calendar is D'Andre Williams v. Brian Fischer and Dox. The parties agree that this case should be remanded to the district court, and the principal and district court. The parties support the case. Why shouldn't we just send it back without, you know, right away to let it be developed on the next record? Your Honor, because we believe there remains a dispute over whether the district court appropriately applied RLUIPA when granting summary judgment to the defendants, and that dispute we think is likely to recur on remand. First of all, I guess your point is that this case isn't moved because even now the parties at loggerheads under the current situation, and he's not even getting the benefit of this new system at the present time. That's right, Your Honor, and that is outside the record, but that is correct. Right, right. And so your point, I guess, is that by going ahead, deciding this case on the earlier record, then we would actually establish rules which could then be and clarify the rules and that could be applicable in the future going forward. That's exactly right, Your Honor, and there's two points on which we think this Court's clarification would be helpful. First is the fact that the State's evidence was not specific enough about what it would cost to actually accommodate Mr. Williams, and instead described those costs very generally. And second, when claiming that the cost to accommodate Mr. Williams would be too high, the State's evidence was not about him in particular, and instead concerned what it would cost to make kosher vegan meals available system-wide. And by being conclusory, and by not being prisoner-specific, we think the State's evidence fell well short of what RLUIPA requires. Let me understand. The State has agreed to a remand because they've changed their menu availability, correct? That is correct, Your Honor. My understanding is the State's agreed to a remand because the menu available to prisoners has changed, although Mr. Williams is currently housed in a facility where the new menu is not available. Okay. And you want us, should we draft an opinion or an order, to tell the State, to tell us the actual difference in cost, and to explain why that would be a hardship? Do I understand your position? I think you do, Your Honor, although I'm not sure the Court even needs to go that far. I think what would be helpful from this Court is an explanation as to why the District Court's grant of summary judgment on the record that was before it was incorrect. And again . . . Even at that time it was incorrect? That's right. That's right. The grant of summary judgment on the record that is before this Court, the record that supports the final judgment, was incorrect because the State's principal evidence, an affidavit from Mr. Schattinger about why the State could not accommodate Mr. Williams, was entirely conclusory about why it would cost too much. These go to the two questions, right, of compelling interest, why the State has a compelling interest. They have to make a showing, a more detailed showing, than occurred here. And also that there isn't a lesser restrictive means of accomplishing this. And I note that there are various alternatives that are suggested in that score that could have been explored. Is that right? Exactly right, Your Honor. Right. And I'm not even sure, you know, the Court needs to reach the least restrictive means questions because the compelling interest issue is itself alone dispositive in terms of why the district court's grant of summary judgment was incorrect. What sort of detail is required here? I think that's a good question, Your Honor. And the cases, I don't think, set out a clear line and there are no bright line rules here. If it's Ipsy-Dixit, this costs too much and it's too difficult and it's hard for an administrative for us to do it and therefore that can't satisfy a court that there's a compelling interest. So I'm just trying to figure out, in my own mind, if we were to give guidance to the court, to the prison authorities, what would be the requirement, what would we say the kind of detail that's required? And I think, Your Honor, two aspects of what would be sufficient evidence here could be a specific dollar amount, what it would actually cost to accommodate Mr. Williams and then additionally why that cost, why paying that cost would actually impinge upon the state's other objectives or other uses of its money. And it's your point that the case law does not allow the state just to allege general costs of accommodating people in a similar situation and what this would do to the overall system. It has to be specific to the particular person. Exactly right, Your Honor. I think the Supreme Court made that clear in Holt. Other circuits have made that clear about the need to be prisoner-specific and the fact that the evidence cannot be conclusory, I think, comes from a wealth of cases both from this Court and from others. And guidance on those two points, we think, would be helpful on remand so that the district court does not commit the same errors when adjudicating future disputes between the parties about the state's obligation. Would this be conserved judicial resources or would it be a greater expenditure of judicial resources for us to keep this case and do what you say? We believe it would conserve judicial resources, Your Honor. Of course, the Court is hearing the case right now and the parties agree that the case is going to be remanded. And so the district court is going to hear the case again regardless. So I think this would conserve judicial resources by potentially preventing another appeal down the road after remand. If this Court were to remand without saying anything about the merits, I think it's likely there will be future disputes before the district court. And if the district court makes the same errors again, as I think it would be— Can we wait to see how the Supreme Court deals with the Trump travel ban? Whether they decide it's moot or are going to just hear the present case or send it back for further development and relate it to new changes? Well, I certainly respect whatever—the Court should take as much time as it thinks it needs for this, but I believe the Court should address the merits instead of simply remanding without saying anything about them at all. If the Court has nothing further, I'll reserve the rest of my time for rebuttal. Thank you. You have reserved two minutes for rebuttal. We'll hear from the government. From Dox. May it please the Court, Zainab Chaudhry for the Department. Your Honors, let me start by disagreeing with counsel's assertion that this would save judicial resources. He seems to be assuming that a merits review by this Court would result in a conclusion that the district court improperly granted the Department's summary judgment. But it's very well possible, and we believe strongly possible, that the Court could affirm. And that would require plaintiff to then commence and exhaust a new grievance procedure within the system, possibly commence a new lawsuit, possibly a new appeal with a new panel some years from now. We can make a preliminary determination, or maybe even more of that, and decide whether or not we would affirm or not before we make this decision. Because he's made, I think, at least in my mind, a fairly, and I want to hear your response to it, a fairly compelling case that the justification that was offered just is insufficient. And they've got to do more when dealing with these religious objections to prison life, and show how it's actually going to cost, going to be a burden that they can't meet. And that's why, and that kind of showing wasn't, I don't think was made here, frankly. Your Honor, I disagree that the showing wasn't made. Certainly I agree on the standard, conclusory statements would not be sufficient, but I don't believe that a specific dollar amount needs to be shown. And I think in this case, unlike the cases cited by plaintiff, we have more than that conclusory information. We have a very detailed declaration from the Director of the Correctional Services, Food and Nutrition Services, which not just says in a conclusory manner that there's a cost, burden and expense. Certainly there would be. But, you know, in addition to that, there's the specialized food purchases. He explains the details of how and why those expenses would be incurred, including purchasing, packaging, transportation, new equipment, new staffing, creating space for a new kosher line at every single facility that a plaintiff could be housed at. And we have a second compelling interest, which is the physical- That's the most extreme situation, but there could be intermediate steps that could be taken, which is leaving certain items off the trays, providing transportable food to the prison, as they're doing under the new system, things of that sort. I think the record shows, though, that it's not just a simple matter of swapping something out for something else or leaving something off. In order to be kosher-compliant, these meals are prepared at a separate facility. They are wrapped and transported in a particular way. They have to be reheated in a particular way. You eliminate his allergy, correct? He's got a dairy allergy, is that right? That's right. If they can accommodate that, why can't they accommodate the religious needs? Well, under the old law, the explanation about why it was difficult was the multitude of restrictions. It's not only the dairy allergy, but in combination with the other restrictions, for example, the record does show, the Schattinger Declaration does show, that doing so would compromise the nutritional adequacy of the meal, particularly with regard to protein, in view of the dairy allergy, because typically that would be a substitute. So there were a lot of problems and a lot of interests at the time. These are sort of general, it seems to me what's being done here is, what do I do if 10% of the prisoners have the same kind of request? He's throwing up his hands on that score. But those aren't the circumstances that we're dealing with here, are they? I mean, we're dealing with a, it has to be taken on a prisoner by prisoner basis, doesn't it? That's correct, Your Honor, except doing so in light of all the restrictions, even for one prisoner, results in all of the costs and expenses that are outlined in the declaration in the record. But Your Honor, there is so many- I don't mean to interrupt. Yes. Do you know if Mr. Williams has applied to transfer to a facility that has kosher availability? So I did want to address this point. The reason he is at a facility that does not have this menu is that he is at Green Haven Correctional Facility, which is the one kosher, excuse me, one facility that since the 1980s has had its own hot kosher kitchen. So in view of that facility's own kosher facilities, the meal is not specifically made available there. But I will point out that the record shows- It doesn't have a kosher facility, that's what you're saying? It does have a kosher facility, which is why the other kosher meal that is available at the 57 other facilities is not- Is he getting what he desires now, what his religion requires? Your Honor, again, this isn't in the record, and another reason that emphasizes why this should go back to the district court. He has not currently, as of yet, although he's been there some months, he has not requested to be put on that kosher line. And I point out also to the court, in the reply brief, counsel has indicated that even though being placed at Green Haven was one of plaintiff's original alternative requests, if he couldn't get all the substitutes he wanted, he wanted to be put at a facility that had that kosher kitchen, the only one of which is Green Haven. And now he's there, and counsel's reply brief states that while he did originally want that, now he's not sure that meets his needs or may not meet his needs. So there's also not only changed circumstances about what docs can provide as alternatives and substitutes under the new system. But also whether the plaintiff is even willing to accept those things or if some of his requests have changed in the interim. Are you suggesting that he's proceeding in bad faith here? No, Your Honor, I'm not suggesting he's- I mean, I thought it was accepted that he does have a sincere religious belief and that he was being burdened by the present. That's correct. We do not dispute the sincerity of the belief or the substantiality of the burden. And I certainly did not mean to imply bad faith. What I meant to say is that even something like his desire or his conclusion that the Green Haven facilities kosher meals also do not meet his needs. Although previously believing that it may is another reason that highlights why this should all go back to the district court for development of the record with respect to all of these facts that can't be answered on the current record. And sort of giving general guidelines in a vacuum is not really necessary. It wouldn't be in a vacuum, it would be on the prior record. That's correct. So it wouldn't be in a vacuum, and then there would be changes made, but it might forestall a recurrence of, it might lead to the resolution of the whole case on remand rather than a further appeal. I disagree, Your Honor, but it certainly, it could happen that, of course, the court is free to do as it will. But we definitely think that the Flores-Jacobson remand would provide a more full and current record on which all of these determinations could be made. The case may even well be moot, it may well be settled. Do you have any reason to think that under this present system that the situation would be resolved? Or, I mean, my impression is that it still wouldn't be satisfactory and you'd still be back up here. And then the question would be on what kind of a record would that be in terms of a showing of compelling interest. Let me say this, Your Honor. The department has been clear in its brief to this court, in its motion to this court in communications with council, that we are willing and able to make the requested accommodated in the complaint to the plaintiff. We believe we would be able to do that even in his current location at Green Haven facility. But again, all of these facts are not in the record, and we also have not been advised that he would be willing to accept those accommodations, though we think they fulfill the complaint's requests. Thank you. Thank you. Counsel, I'd like to ask you whether Mr. Williams is prepared to accept what he asked for. Is he prepared to take yes for an answer? Your Honor, yes, and as I think we said in our brief, Mr. Williams is not eager to litigate this matter. He'd be more than happy to resolve this. We did try to settle the matter. In the details of those discussions, in those details, it fell apart. But we would be more than amenable to continuing those discussions and hopefully resolving the case before the district court. But I think as this- I've heard the state say they're willing to do what's necessary to make sure Mr. Williams gets the food that he requires. That's right, Your Honor, and the settlement discussions we had, the parties had agreed- The point of that is, who decides what's necessary? Well, and that's exactly right, Your Honor. I think that the details of how those accommodations are implemented are, I think, where there may be a gap between the parties. I don't want to say that the case won't settle. Is there a chance that the parties could get together today and tell us before we did anything further whether there could be a resolution of this based upon what's been said here in court? I mean, that would certainly save judicial resources. Sure, I think, speaking at least for myself and Mr. Williams, we'd be happy to have further discussions before this court did anything. I'm not sure as a practical matter whether it could happen today. We would try to do it, I think, as quickly as possible if- What if we held off issuing any opinion for today being the 9th, 10th of October for ten days? Would that, find the next month. Yeah, that would be fine by us, Your Honor. For the 21st, the ten days? Sure, that would be fine by us, Your Honor, yes. So we will hold it for ten days and ask to hear from both of you that the state is willing to give Mr. Williams what he asked for and he's willing to accept what he asked for. Sure, yes, that would be fine by us, Your Honor. Were you also suing for damages? No, Your Honor, this is, the initial complaint which was filed pro se sought a wealth of relief on a variety of claims. The only claim that's before this court is the request for injunctive relief under RLUIPA. If I might, Your Honor, just with respect to this court's request and whether Mr. Williams would accept what he requests in his complaint. As Judge Walker alluded to, the one issue that I think may be a sticking point is just how exactly that is implemented, how it's determined what Mr. Williams is going to receive, what he does in fact receive, and whether that suffices or not. And so at a high level, I think it may be easy to reach agreement. I suspect that the details are where it may take longer. Well, I'll just tell you this, we would be happy not to see this case again. Certainly, Your Honor, and I think also if this court were to issue an order remanding the case and address the merits in the manner that we're asking, those discussions would, I suspect, continue before the district court with the benefit of an expanded record, discovery into what the new menu is, what exactly the state could do to modify the menu, and so forth. What Judge Walker is asking, and I second, and I'm sure Judge Crawford thirds, is can you do this without us directing you back to the district court? Can you do this as litigators, litigating and deciding on this issue? Sure, and we'll certainly try to, Your Honor. I think that if we're not able to, what would come with the district court is better knowledge about what the state can do, and that might help things a lot further. That makes sense. All right, in that case, I will reserve decision, especially until we hear from you on the 21st of October, and I will ask the clerk to adjourn court. I'm sorry, can I just ask for a few additional days until the 24th? Of course. Sure. The 24th, and we'll note it on our internal. Thank you, Your Honor. You can adjourn court.